UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABEL COLIN, | |
| Petitioner, | Case No. 13 C 8592 |
| v. | |
| RANDY PFISTER, | Judge John Robert Blakey |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Abel Colin brings a Petition for Writ of Habeas Corpus ("Petition") [1] pursuant to 28 U.S.C. § 2254, challenging his convictions entered in the Circuit Court of Cook County. Petitioner is serving two consecutive 60-year sentences for aggravated criminal sexual assault, and he is presently housed at Pontiac Correctional Center. For the following reasons, this Court denies the Petition, and declines to issue a certificate of appealability.

I. **Legal Standard**

Federal review of state court decisions under § 2254 is limited. With respect to a state court's determination of an issue on the merits, habeas relief can be granted only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011). This Court presumes that the state court's account of the facts is correct,

and Petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012).

State prisoners must give the state courts "one full opportunity" to resolve any constitutional issues by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If a petitioner asserts a claim for relief that he did not present in the first instance to the state courts, the claim is procedurally defaulted and "federal courts may not address those claims unless the petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice if the claims are ignored." *Byers v. Basinger*, 610 F.3d 980, 985 (7th Cir. 2010).

## II. Background and Procedural History

This Court begins by summarizing the facts and procedural posture from the state court record [18] (attaching Exhibits A to DDD). This Court presumes that the state court's factual determinations are correct for the purposes of habeas review as Petitioner does not contest them or point to clear and convincing contrary evidence. 28 U.S.C. § 2254(e)(1).

### A. Pre-Trial Proceedings

The State initially charged Petitioner and his wife, Stephanie Colin, with aggravated criminal sexual assault, and other claims, in a 68-count indictment. Ex. A at C40-C107. Years before trial, the State entered a *nolle prosequi* on Counts 3, 23 and 24 (among other counts). After the jury was sworn, and at the agreement of

2

the parties, the State entered a *nolle prosequi* on Counts 1 and 2 in exchange for reinstating Counts 3, 23, and 24. 4/25/00 Hr'g Tr. at C3-C5 (Ex. D).

**B.   Trial**

On June 6, 2000, Petitioner was convicted on two counts of aggravated criminal sexual assault. The conviction arose from Petitioner's sexual assault of a minor female (who was identified in the record by her initials: "S.F.") from 1993 to 1995. At this time, the victim was six to eight years old. Petitioner and the victim were neighbors, and Petitioner and Stephanie babysat the victim before and after school.

The State's evidence at trial showed that Petitioner sexually assaulted, raped, sodomized and tortured S.F. on a daily basis with Stephanie's assistance. S.F. recounted the typical encounter at trial. Stephanie first would clean her genitals with a hose, and then would deliver her naked to Petitioner. During the ensuing sexual assaults, Stephanie would watch or hold the victim's legs open. On occasion, Petitioner would take S.F. to his teenage son's bedroom, and the son too would sexually assault S.F.

S.F. also testified that, in October 1994, Petitioner coerced her into making audio recordings. Petitioner told S.F. what to say, and, in the recordings, S.F. repeated that she went out late at night to see "gangbangers" who had sex with her.

Stephanie also testified for the State. Before trial, Stephanie had pled guilty to aggravated criminal sexual assault for her involvement in the assaults, and, at trial, she testified that she had been convicted and sentenced to 23 years in prison.

3

When questioned about Petitioner's assaults, however, Stephanie denied ever witnessing Petitioner assault S.F. and denied knowledge of the assaults. The State confronted Stephanie with a sworn statement she had given on February 10, 1995. Stephanie admitted to signing the statement, but denied almost every assertion therein. Contrary to the sworn statement, Stephanie denied that: (1) when S.F. came home before school, Stephanie would deliver S.F. to Petitioner so he could have sex with S.F.; (2) Petitioner also had sex with S.F. in the afternoon; (3) Stephanie saw Petitioner "make love" to S.F.; (4) Stephanie sometimes helped Petitioner by holding S.F.'s legs open; and (5) Petitioner fabricated the story that "gangbangers" sexually assaulted S.F.

In establishing Petitioner's *modus operandi*, the State introduced other-crimes evidence through the testimony of an earlier victim (also identified by her initials: "H.R.") who had been assaulted by Petitioner. H.R. testified that, in 1987, when she was 13 years old, she and Petitioner were neighbors. On January 24, 1987, H.R. was doing laundry at a laundromat, Petitioner and Stephanie arrived in their van and they asked H.R. to enter. H.R. entered the van out of fear. Petitioner and Stephanie drove the van to an alley where Stephanie gave H.R. a pill that made her drowsy and told H.R. to lie down. H.R.'s next memory was Stephanie pinning her arms down as Petitioner raped her.

The State also called Petitioner's daughter ("S.C.") who, at the time of trial, was 11 years old. S.C. testified that S.F. came over to the house daily, and Petitioner often escorted S.F. to the basement. When this happened, Stephanie and

4

S.C.'s siblings told S.C. that she was "not suppose[d] to go down there." Despite this instruction, S.C. testified that, on one occasion, she went to the basement and saw Petitioner and S.F. on the bed, with Petitioner trying to take off his own and S.F.'s clothes. On another occasion, S.C. heard S.F. tell Petitioner, "Get off me," and Petitioner reply, "No."

The State also presented expert testimony from Dr. Emily Flaherty in the field of child sexual abuse. Dr. Flaherty opined that S.F. had been sexually abused and that her injuries were consistent with long-term repeated penetration by an adult penis.

The State and Petitioner stipulated at trial that Joanna Doute, an employee at the forensic biology unit of the Chicago Police Department Crime Laboratory, would testify that the Laboratory received two vaginal swabs, one vaginal smear, two rectal swabs, one rectal smear, and one pair of the victim's underwear. Chemical testing and microscopic examination of the vaginal and rectal swabs and smears yielded negative results for the presence of semen. A microscopic exam of the underwear revealed the presence of sperm fragments, and chemical and erological tests revealed the presence of human blood. Further testing was precluded due to an insufficient amount of sample.

The parties also stipulated that swatches of underwear fabric as well as reference samples from Petitioner and S.F. were sent to Dr. Alan Friedman, owner of Helix Biotech, Inc. Dr. Friedman testified as Petitioner's expert in the field of DNA analysis, and the State did not object to Dr. Friedman being tendered as an

5

expert. Dr. Friedman evaluated the DNA profiles of the genetic material recovered from S.F.'s underwear. Dr. Friedman opined that the genetic material contained DNA profiles of "three or more individuals, most likely three," and none of the profiles were "consistent with the DNA profile for [Petitioner]." Dr. Friedman testified that the quantity of the genetic material recovered from S.F.'s underwear was limited, and, while "there was human DNA present," there was "very little of it," "the concentration was very, very low," and "both the concentration and the absolute quantity was very, very small."

On cross-examination, Dr. Friedman admitted that the limited amount of genetic material could have affected the test results. Dr. Friedman also admitted that Petitioner's DNA could have been present but not seen on the underwear. Dr. Friedman testified that the sample from the underwear matched Petitioner's DNA on 9 of 11 of the tested alleles, with two alleles being off because Petitioner "varied at two genetic systems." Dr. Friedman acknowledged that the very little amount of DNA and the low concentration could have affected the intensity of the alleles in the amplification process. Given that the intensity of the amplication of the alleles could have been affected by the concentration and weakness of the DNA, Dr. Friedman admitted that "it is possible" that the two alleles failed to show in this case. While Dr. Friedman admitted that the DNA could have been present and not seen, he maintained his conclusion that Petitioner was excluded as a contributor of the DNA on S.F.'s underwear.

Petitioner argued that S.F. had suffered her sexual trauma and injuries during consensual sexual encounters with "gangbangers" in the neighborhood. Petitioner argued that Dr. Friedman's exclusion of Petitioner as a source of DNA on the victim's underwear corroborated his defense theory.

During closing arguments, Petitioner's counsel argued that Dr. Friedman's "conclusions were that … the sperm fragment that was found on the underwear did not come from or was not contributed by Abel Colin." The prosecutor responded that Dr. Friedman "overwhelmingly buried" Petitioner. The prosecutor argued that Dr. Friedman

> had to admit that nine alleles matched [Petitioner] to a tee. And that's because the DNA was so dilute and so weak that the two alleles that are missing may have been an allele dropout. And then, yes, folks, he had to admit that [Petitioner] could have been the source of the DNA.

The prosecutor continued, arguing that Dr. Friedman said there were three DNA profiles in the sperm fraction: "One was [S.F.]. One was the defendant, Abel Colin. And one was the defendant, Anthony Colin [Petitioner's teenage son]." After a defense objection, the prosecutor corrected herself: "I'm sorry. One was possibly Anthony Colin." Later in rebuttal, the prosecutor noted that Petitioner and Anthony both assaulted S.F., and she argued "that is absolutely corroborated by the DNA testimony, that [S.F.] was shared by father and son."

After closing arguments, the trial court issued jury instructions, including that closing arguments are not evidence: "Neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys

7

which is not based on the evidence should be disregarded." The jury convicted Petitioner on two counts of aggravated criminal sexual abuse.

### C. Sentencing

The trial court found that Petitioner was eligible for extended sentences based on two statutory factors: (1) Petitioner's behavior was exceptionally brutal or heinous; and (2) more than one offender participated in the acts. 6/6/00 Sentencing Hr'g at G71-G73 (Ex. I). Based on these findings and others, the trial court sentenced Petitioner to two consecutive 60-year prison terms. *Id.* at G77.

### D. Direct Appeal

On appeal, Petitioner raised two arguments. Petitioner (1) challenged the State's introduction of other-crimes evidence, and (2) argued that his sentence was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Appellate Brief (Ex. I). On September 30, 2003, the Appellate Court denied both arguments and affirmed Petitioner's conviction and sentence. *People v. Colin*, 799 N.E.2d 451 (Ill. App. Ct. 2003) (Ex. O). As to the *Apprendi* argument, the Court found that Petitioner had forfeited the argument by not raising it during sentencing or in his post-sentencing motion. *Id.* at 464. The Court nonetheless elected to review Petitioner's argument for plain error and found none. *Id.* at 464-65.

On November 14, 2003, Petitioner filed a Petition for Leave to Appeal in the Illinois Supreme Court, raising the same two arguments. 11/14/03 Petition for Leave to Appeal (Ex. P). The Court denied the Petition on January 28, 2004. *People v. Colin*, 807 N.E.2d 977 (Ill. 2004) (unpublished) (Ex. Q).

### E. Post-Conviction Proceedings

On September 17, 2003, Petitioner filed a Pro Se Post-Conviction Petition in the Circuit Court of Cook County raising 15 grounds for relief. 9/17/13 Petition (Ex. R at C23-C75). On November 26, 2003, the Circuit Court denied the Petition as "frivolous and patently without merit." 11/26/03 Order (Ex. R at C82-C98).

The Appellate Court reversed and remanded, finding that Petitioner had stated the "gist" of a constitutional claim that appellate counsel was ineffective for failing to argue on direct appeal that the prosecutor's closing arguments were improper. 11/3/06 Order (Ex. S). The Illinois Supreme Court denied the State's ensuing Petition for Leave to Appeal. 1/24/07 Order (Ex. U).

On remand, Petitioner filed an Amended Post-Conviction Petition, arguing that his trial and appellate counsel were ineffective for, among other things, failing to challenge the prosecutor's allegedly improper closing argument at trial, in post-trial motions or on appeal. 5/21/08 Amended Petition for Post-Conviction Relief (Ex. V at C69-C147). The Circuit Court dismissed the Amended Post-Conviction Petition, finding that Petitioner had failed to make a substantial showing that his constitutional rights were violated. 4/8/09 Order (Ex. W at C364-C375).

On June 22, 2010, Petitioner again appealed to the Appellate Court, arguing in relevant part that appellate counsel was ineffective for failing to argue on direct appeal that the prosecutor made improper closing arguments. 6/22/10 Appellate Brief (Ex. Y). The Appellate Court denied the appeal. *People v. Colin*, No. 1-09-1321 (Ill. App. Ct. Feb. 9, 2011) (unpublished) (Ex. BB). The Court found that any

9

improper statements regarding the DNA evidence were harmless because the evidence against Petitioner was substantial. *Id.* at *5-10.

Petitioner filed a Petition for Leave to Appeal in the Illinois Supreme Court, raising the same issues raised below. Petition for Leave to Appeal (Ex. CC). The Court denied the Petition on May 25, 2011. *People v. Colin*, 949 N.E.2d 1100 (Ill. 2011) (unpublished) (Ex. DD).

## III. Analysis

Petitioner brings four claims in his Petition for Writ of Habeas Corpus. None though is successful. Claims 1 (Petitioner's extended-term sentences) and 2 (ineffective assistance of trial counsel) are defaulted and no exception applies; Claim 3 (ineffective assistance of appellate counsel) fails on the merits; and Claim 4 (ineffective assistance of post-conviction counsel) is non-cognizable.

### A. Claim 1: Petitioner's Extended-Term Sentences

Petitioner argues that his two consecutive extended term 60-year sentences are unconstitutional under *Apprendi*, because the findings underlying the sentences were not alleged in the indictment or submitted and considered by the jury. Federal courts, however, cannot grant habeas relief on a claim the state court rejected based on "adequate and independent state law procedural grounds." *Dretke v. Haley*, 541 U.S. 386, 392 (2004). Forfeiture is one such example. Forfeiture includes when the petitioner has failed to present the legal issue "in the right court, in the right way, and at the right time—as state rules define those courts, ways, and times." *Szabo v.*

*Walls*, 313 F.3d 392, 395 (7th Cir. 2002); *see also Miranda v. Leibach*, 394 F.3d 984, 991-92, 995-97 (7th Cir. 2005).

Here, as the Appellate Court found on direct appeal, Petitioner forfeited any *Apprendi* argument by not raising the argument to the trial court during sentencing or in his post-sentencing motion. *Colin*, 799 N.E.2d at 464 (Ex. O). Despite his failure to comply with Illinois procedural rules, the Appellate Court nonetheless elected to consider and rejected the merits of Petitioner's *Apprendi* argument under a plain error standard of review. *Id.* at 464-65. Contrary to Petitioner's argument, the Illinois Appellate Court's election to proceed to the merits did not cure Petitioner's forfeiture for purposes of this Court's habeas review. *Long v. Butler*, No. 13-3327, ___ F.3d ___, 2015 WL 6500128, at *10 (7th Cir. Oct. 27, 2015); *Miranda*, 394 F.3d at 992.

Petitioner cannot avoid this default unless he shows "cause and prejudice" for the default or that there would be a "fundamental miscarriage of justice." *Byers*, 610 F.3d at 985. He alleges neither, and this Court has not independently found either from the record. For these reasons, Petitioner's *Apprendi* claim is procedurally defaulted, and no exception saves it.

**B.     Claim 2: Ineffective Assistance of Trial Counsel**

To avoid procedural default, state prisoners must give the state courts "one full opportunity" to resolve any constitutional issues by "invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. Petitioner, moreover, must present each factual basis for an ineffective

11

assistance of counsel claim to avoid default. *Stevens v. McBride*, 489 F.3d 883, 893-94 (7th Cir. 2007).

Here, Petitioner did not argue anywhere in his direct or collateral state proceedings that trial counsel was ineffective for not objecting to reinstatement of Counts 3 and 23. Instead, in his Petition to Vacate a Void Judgment, Petitioner raised a different argument—that the trial court had no jurisdiction to enter judgment on Counts 3 and 23 because they had been improperly reinstated under Illinois law. Petition to Vacate a Void Judgment (Ex. W at C306-20); Petitioner's Brief (Ex. QQ); Petition for Leave to Appeal (Ex. UU). Petitioner's ineffective assistance of trial counsel claim thus was not raised in state court and is procedurally defaulted.

Again, Petitioner cannot avoid this default unless he shows "cause and prejudice" for the default or that there would be a "fundamental miscarriage of justice." *Byers*, 610 F.3d at 985. Petitioner argues that post-conviction counsel's ineffectiveness caused him to default his ineffective assistance of trial counsel claim. Ordinarily, post-conviction counsel's ineffectiveness cannot excuse a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991). While the Supreme Court has crafted a narrow exception to *Coleman* for states that effectively prohibit ineffective assistance claims on direct appeal, *see Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013); *Martinez v. Ryan*, 132 S. Ct. 1309, 1318-20 (2012), this narrow exception does not apply in Illinois under the circumstances here. *Long*, 2015 WL 6500128, at *12; *accord Murphy v. Atchison*, No. 12-3106, 2013 WL

12

4495652, at *22 (N.D. Ill. Aug. 9, 2013) (collecting cases). Under Illinois law, in fact, when an ineffective assistance of trial counsel claim is based on the trial record, the claim is waived unless brought on direct appeal. *People v. Smith*, 745 N.E.2d 1194, 1201 (Ill. 2000).

Here, Petitioner argues that his trial counsel should have objected to the State's oral motion at trial to reinstate Counts 3 and 23. *See* 4/25/00 Tr. at C3-C5 (Ex. D). Petitioner's ineffective assistance claim accordingly is based on the trial record, so it could have been brought on direct appeal. *Smith*, 745 N.E.2d at 1201. For that reason, Petitioner's ineffective assistance of trial counsel claim is procedurally defaulted, and the *Trevino* and *Martinez* exceptions do not save it.

### C. Claim 3: Ineffective Assistance of Appellate Counsel

Petitioner argues that his appellate counsel was ineffective for not challenging on direct appeal the prosecutor's closing statements misstating the DNA evidence presented at trial. The prosecutor stated that Dr. Friedman "overwhelmingly buried" Petitioner, and that his testimony "absolutely corroborated" the fact that the victim had been "shared between father and son." This claim went through one full round of state court review, and the Appellate Court on post-conviction appeal issued the last reasoned decision. *See Colin*, No. 1-09-1321, at pp. 14-15, 18, 30 (Ex. BB). This Court proceeds to the merits.

On habeas review, this Court must determine whether the state court's application of the ineffective assistance of counsel standard was unreasonable, not whether defense counsel's performance fell below *Strickland v. Washington*, 466

13

U.S. 668 (1984). *See Harrington*, 562 U.S. at 101; *accord Long*, 2015 WL 6500128, at *8. The state court is granted "deference and latitude" that are not in operation when the case involves review under the *Strickland* standard itself. *Harrington*, 562 U.S. at 101; *see also Long*, 2015 WL 6500128, at *8. Finding that the state court's application of *Strickland* was unreasonable is a high bar requiring "clear error." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009).

Under *Strickland*, 466 U.S. at 688, 694, this Court must determine whether appellate counsel's performance fell below an "objective standard of reasonableness," and that this performance prejudiced Petitioner, that is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." There is a "strong presumption" that counsel performed effectively. *Allen*, 555 F.3d at 600. In the context of Illinois law governing closing arguments, the prosecutor's improper statements require reversal only if they result in "substantial" prejudice to the defendant. *People v. Moore*, 922 N.E.2d 435, 442 (Ill. App. Ct. 2009). Substantial prejudice occurs if the improper statements were a "material factor" in Petitioner's conviction. *People v. Wheeler*, 871 N.E.2d 728, 745 (Ill. 2007).

Here, the Appellate Court found that the prosecutor's closing argument regarding the DNA evidence overstated the evidence but was not a material factor in Petitioner's conviction when weighed against the entire record. *Colin*, No. 1-09-1321, at pp. 14-15, 18, 30 (Ex. BB). Thus, there was no prejudice to Petitioner from

appellate counsel not challenging the prosecutor's closing statements on appeal. *Id.* at pp. 18, 30.

The Appellate Court highlighted the following evidence to show the weight of the State's evidence against Petitioner. Two witnesses—S.F. and Stephanie (through her prior sworn statement)—testified that they saw (and in S.F.'s case, experienced) Petitioner assaulting S.F. *Id.* at p. 17. A third witness, Petitioner's daughter, S.C., testified that she saw Petitioner take S.F. down to the basement on numerous occasions and, on one occasion, heard S.F. tell Petitioner, "Get off me," and Petitioner reply, "No." *Id.* at p. 17. On another occasion, S.C. went to the basement and saw Petitioner and S.F. on the bed, with Petitioner trying to take off his own and S.F.'s clothes. *Id.*

Beyond the direct evidence, the State presented evidence of Petitioner's *modus operandi. Id.* H.R. testified that she was sexually assaulted by Petitioner years before S.F., and the Appellate Court found "striking similarities" between the assaults. *Id.* The State also presented expert testimony from Dr. Flaherty who opined that S.F. had been sexually abused and that her injuries were consistent with long-term repeated penetration by an adult penis. *Id.* at pp. 17-18.

Dr. Friedman testified in Petitioner's defense, but he could not overcome the overwhelming evidence of Petitioner's guilt. Dr. Friedman testified that the genetic material on the victim's underwear contained DNA profiles of "three or more individuals, most likely three," and he opined that none of the profiles was "consistent with the DNA profile for [Petitioner]." *Id.* at p.11. The State discredited

15

these opinions on cross-examination. Dr. Friedman admitted that the limited amount of genetic material may have affected the testing results. *Id.* Dr. Friedman admitted that Petitioner's DNA could have been present on the underwear but not seen. *Id.* at p. 11-12. Dr. Friedman admitted that the sample from the underwear matched Petitioner's DNA in 9 out of 11 alleles that were tested. *Id.* And Dr. Friedman admitted that it was possible that Petitioner's son was the third person whose DNA appeared on the victim's underwear. *Id.* at pp. 12-13, 15.

Based on this evidence, the Appellate Court reasonably concluded that the prosecutor's closing statements were harmless, and appellate counsel was not ineffective by failing to challenge those statements on appeal. Petitioner's supplemental evidence [25] that the trial prosecutor was suspended in 2013 for unrelated conduct does not change this Court's analysis. Petitioner's third claim is barred by § 2254(d)(1).

### D. Claim 4: Ineffective Assistance of Post-Conviction Counsel

Petitioner's final claim states that post-conviction counsel was ineffective. To the extent Petitioner intends this argument to be a stand-alone claim, it is barred by § 2254(i), which provides that the "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." *See also Szabo*, 313 F.3d at 396-97.[1]

---

[1] Petitioner also has filed discovery motions [31] [32] regarding page 20 of Respondent's Answer [17], which was left blank. This presumably was an inadvertent error and, in any event, the answers to Petitioner's propounded requests for admission would not change this Court's ruling. The discovery motions are denied.

**IV.     Certificate of Appealability**

Under § 2253(c)(2), a "certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." An applicant has made a "substantial showing" when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Resendez v. Knight*, 653 F.3d 445, 446 (7th Cir. 2011) (internal quotations omitted). Here, this Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right or that reasonable jurists would debate the resolution of his claims. Accordingly, this Court declines to issue a certificate of appealability.

**V.     Conclusion**

The Petition for Writ of Habeas Corpus [1] is denied. Petitioner's pending discovery motions [31] [32] also are denied. This Court declines to issue a certificate of appealability. The Clerk is directed to enter a Rule 58 Judgment in favor of Respondent and against Petitioner. Civil case terminated.

Dated: November 25, 2015

                                                                Entered:

                                                                 United States District Judge